IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **THOMAS J. MCMANAMON,** | Case No.: 1:24-cv-00635 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **NANCY F. LERNER, et al.,** | |
| Defendants. | MEMORANDUM OPINION & ORDER |

Before the Court is Defendant Nancy F. Lerner's ("Lerner") Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction filed on April 22, 2024. (Doc. No. 4.) On May 28, 2024, Plaintiff Thomas J. McManamon ("McManamon") filed an Opposition. (Doc. No. 7.) On June 11, 2024, Lerner filed a Reply in support of her Motion. (Doc. No. 8.) Finally, on August 20, 2024, McManamon filed a Motion to Consolidate Cases. (Doc. No. 9.)

For the following reasons, the Court GRANTS Lerner's Motion to Dismiss, dismisses this case without prejudice for lack of personal jurisdiction, and DENIES McManamon's Motion to Consolidate as moot.

**I.      Procedural History**

On January 18, 2024, McManamon filed a Complaint in the Cuyahoga County Court of Common Pleas against Lerner and NFF Acquisition, LLC ("NFF") for declaratory judgment (Count I), fraudulent inducement (Count II), fraudulent misrepresentation (Count III), and breach of oral contract (Count IV). (Doc. No. 1-1.) Generally, McManamon alleges that Lerner breached an agreement to employ him as a pilot through the age of 65. (*See generally id*. at ¶ 21.) On April 8, 2024, Lerner removed the case to this Court. (Doc. No. 1.) In her Notice of Removal, Lerner argues

that McManamon fraudulently joined NFF, an Ohio corporation, to defeat removal on diversity grounds. (*Id*. at PageID# 3.)

On April 22, 2024, Lerner filed a Motion to Dismiss McManamon's Complaint for failure to state a claim and for lack of personal jurisdiction. (Doc. No. 4.) On May 28, 2024, McManamon filed an Opposition. (Doc. No. 7.) And, on June 11, 2024, Lerner filed a Reply in support of her Motion. (Doc. No. 8.)

Finally, on August 20, 2024, McManamon filed a Motion to Consolidate Cases. (Doc. No. 9.) McManamon argues that the Court should consolidate a lawsuit that Lerner filed against him on March 28, 2024, in the United States District Court for the Central District of California with this case because he filed this case earlier and "judicial economy necessitates [the cases] be consolidated." (*Id*. at PageID# 319.)

## II. Factual Allegations

In his Complaint, McManamon sets forth the following factual allegations. (Doc. No. 1-1.)

McManamon is a resident of Rocky River, Ohio. (*Id*. at ¶ 1.) Lerner is a resident of Coto de Caza, California. (*Id*. at ¶ 2.)

In 2000, McManamon began his career as an airline pilot with TWA. (*Id*. at ¶ 4.) In June 2001, American Airlines acquired TWA. (*Id*. at ¶ 5.) And in December 2001, American Airlines "furloughed [McManamon] due to economic conditions." (*Id*. at ¶ 6.) McManamon continued to earn years of service with American Airlines during the time of his furlough, and American Airlines could recall him at any time. (*Id*. at ¶ 8.)

In December 2005, McManamon began to work as a pilot for Five Star Aviation, a private aviation company. (*Id*. at ¶ 10.) Five Star Aviation "facilitate[s] the flying of private aircraft for Nancy Lerner and her other family members." (*Id*. at ¶ 11.)

In March 2016, American Airlines contacted McManamon and informed him that his furlough had ended, and that McManamon "needed to advise them whether he would agree to be recalled to their employment." (*Id*. at ¶ 14.) If he agreed to be recalled, McManamon would have earned "15 years' worth of seniority," to include the vacation time of a "15-year employee," and "he would have been eligible to be promoted to Captain in less than three years." (*Id*. at ¶¶ 15-17.) After American Airlines contacted him, McManamon "immediately started discussions with members of Five Star Aviation regarding making his decision to leave Five Star Aviation and return to American Airlines or forgo his return to American Airlines and the benefits he would receive." (*Id*. at ¶ 18.)

Five Star Aviation "directed" McManamon to speak with Lerner, so McManamon contacted Lerner and "informed her of the opportunities he would be foregoing if he stayed at Five Star Aviation." (*Id*. at ¶¶ 19, 20.) Lerner "started requesting" that McManamon stay at Five Star Aviation and she "assure[d] him [that] he had employment through his retirement age of 65." (*Id*. at ¶ 21.) Lerner told McManamon that she would "personally pay for his salary after his employment . . . with Five Star Aviation concluded." (*Id*. at ¶ 22.) Lerner also advised McManamon that "her company, [NFF], would employ" him "through the age of 65." (*Id*. at ¶ 23.)

Starting on March 17, 2016, McManamon and Lerner exchanged "bullet points" regarding McManamon's employment.[1] (*Id*. at ¶ 26.) On April 18, 2016, Lerner had another pilot call McManamon to convince him to forego his recall with American Airlines. (*Id*. at ¶ 29.) That same day, McManamon personally spoke with Lerner who "begged [him] not to return to American Airlines and ultimately convinced him not to." (*Id*. at ¶ 30.)

---

[1] Lerner attached these bullet points to her Motion to Dismiss. (*See* Doc. No. 4-3.)

3

On April 25, 2016, McManamon and Lerner signed a "Letter of Intent Regarding Prospective Employment."[2] (*Id*. at ¶ 31.) On July 18, 2016, McManamon advised American Airlines that "he was going to decline to return to American Airlines." (*Id*. at ¶ 36.) On December 12, 2022, McManamon's employment with Five Star Aviation "terminated." (*Id*. at ¶ 37.) McManamon then contacted Lerner "to discuss commencement of his employment with [her] and [NFF]." (*Id*. at ¶ 38.) But Lerner advised McManamon that "she would not be employing him through [NFF]." (*Id*. at ¶ 39.)

McManamon "was then unemployed." (*Id*. at ¶ 40.) In 2023, he "obtained new employment at United Airlines," earning "significantly less" and with "far less seniority," "vacation time," "retirement benefits," and "insurance benefits" than he would have had if he had returned to American Airlines. (*Id*. at ¶¶ 42-47.)

### III. Law and Analysis

#### A. Fraudulent Joinder

As an initial matter, McManamon has not responded to Lerner's argument that he fraudulently joined NFF, whether through a motion to remand or otherwise. "Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). Lerner contends that McManamon fraudulently joined NFF because "[t]he documentary evidence unambiguously supports the conclusion that [NFF] has no connection to [Lerner] or the underlying dispute and that this action cannot reasonably result in liability for [NFF]." (Doc. No. 1, PageID# 5.)

---

[2] McManamon indicated in his Complaint that he attached the Letter of Intent, but he did not actually do so. Lerner attached the Letter of Intent to her Notice of Removal. (*See* Doc. No. 1-2.)

4

The Court construes McManamon's failure to move for remand as a concession that NFF was fraudulently joined. *See, e.g., Moore v. Yum Brands, Inc.*, 2012 U.S. Dist. LEXIS 13237 at *3 (E.D. Ky. Feb. 3, 2012) (finding that the plaintiff conceded fraudulent joinder by, in part, failing to move for remand). And on its own review and for the reasons detailed in Lerner's Notice of Removal (Doc. No. 1), the Court concludes that there is no colorable basis for McManamon to recover against NFF. When a defendant has been fraudulently joined, a "court may exercise jurisdiction over the case, but the court must dismiss that defendant from the action and lacks the power to resolve the merits of the claims against it." *Cline v. Dart Transit Co.*, 2023 U.S. App. LEXIS 9521 at *8 (6th Cir. Apr. 19, 2023) (citing *Pollington v. G4S Secure Sols. (USA) Inc.*, 712 F. App'x 566, 566 (6th Cir. 2018)). Accordingly, the Court dismisses NFF without prejudice from this action.

### B. Lerner's Motion to Dismiss

The Court now turns to Lerner's Motion to Dismiss. Lerner moves to dismiss McManamon's Complaint for failure to state a claim and for lack of personal jurisdiction. (Doc. No. 4.) The court begins and ends its analysis with Lerner's personal jurisdiction argument because, for the following reasons, it concludes that it lacks personal jurisdiction over Lerner. *See Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (explaining that federal courts must first decide whether personal jurisdiction exists before they can proceed to the merits of a case).

#### 1. Rule 12(b)(2) Standard

A motion to dismiss under "Rule 12(b)(2) involves burden shifting." *Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Peters Broad. Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 437 (6th Cir. 2022)). The plaintiff bears the initial burden of making "a prima facie case for personal jurisdiction," which he can do "merely through the complaint." *Id.* The burden then shifts to the defendant, who must support its motion to dismiss "by evidence." *Id.* Once the defendant

has met its burden, the burden shifts back to the plaintiff, who "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."[3] *Theunissen*, 935 F.2d at 1458. A court "must consider the pleadings and affidavits in a light most favorable to the plaintiff," and it may not weigh the defendant's controverting assertions. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

As this is a diversity action, McManamon must satisfy Ohio's requirements for personal jurisdiction. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012). Ohio courts have personal jurisdiction over non-resident defendants "only if (1) the [Ohio] long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 790 (Ohio 2010)). McManamon "must clear both the statutory and the constitutional hurdles, and the Court is free to consider them in either order." *Baker v. Bensalz Prods.*, 480 F. Supp. 3d 792, 801 (S.D. Ohio 2020) (citing *Theunissen*, 935 F.2d at 1459); *see also Conn*, 667 F.3d at 711 ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa.").

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing G*oodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). McManamon does not allege or argue that this Court has general personal jurisdiction over Lerner. Therefore, the Court limits its analysis to specific personal jurisdiction.

---

[3] This is true since neither party requested an evidentiary hearing, and the Court did not hold one. When the court holds an evidentiary hearing, the plaintiff must overcome the defendant's motion by a preponderance of the evidence. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020).

The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263.

Purposeful availment—the first factor—is "the sine qua non for in personam jurisdiction." *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381-82 (6th Cir. 1968). It is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

For the following reasons, the Court concludes that personal jurisdiction over Lerner would not be consistent with due process.[4]

---

[4] The Ohio General Assembly amended Ohio's long-arm statute in April 2021 to extend the reach of Ohio's long-arm statute to the limits of the U.S. Constitution. Before the amendment, "Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that '[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.'" *AmaTech Grp. Ltd. v. Fed. Card Servs., LLC*, 2022 U.S. Dist. LEXIS 1655 at *10 (S.D. Ohio Jan. 5, 2022) (quoting Ohio Rev. Code § 2307.382). Based on that language, "courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows." *Id*. The amendment, however, revised subsection (C) to read: "In addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Ohio courts have yet to rule on the effect of this new language, and federal courts have disagreed over its interpretation. *See A.B. Pratt & Co. v. Bridgeport Grp., LLC*, 2023 U.S. Dist. LEXIS 62708 at *24 (N.D. Ohio Apr. 10, 2023) (collecting cases). As the Court concludes that personal jurisdiction would not be consistent with the Due Process Clause, it need not reach this issue.

7

## 2. Specific Personal Jurisdiction

To make a prima facie showing of specific personal jurisdiction, McManamon must "establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Malone*, 965 F.3d at 504. "Here, that means showing that [Lerner] purposefully availed [her]self of the privilege of conducting activities in the State of Ohio." *Id*.

In his Complaint, McManamon only alleges that Lerner, a resident of California, "ha[s] personal and professional links to Cuyahoga County, Ohio at all times pertinent to the facts alleged herein." (Doc. No. 1-1, ¶ 2.) In her Motion to Dismiss, Lerner argues that McManamon fails to plead any facts showing that the Court has jurisdiction. (Doc. No. 4-1, PageID# 210.) The Court agrees. McManamon's allegation of unspecified personal and professional "links" to Ohio are not reasonably particular and thus do not establish that Lerner purposefully availed herself of the privilege of doing business in Ohio. *See, e.g., Peters*, 40 F.4th at 441-42 (holding that plaintiff's "mention of general injurious conduct occurring in Ohio" was insufficient to establish personal jurisdiction because it "provide[d] no explanation of what acts or activities occurred in that state).

Even if McManamon had established a prima facie case of jurisdiction in his Complaint, the burden then shifts to Lerner to support her Motion to Dismiss with evidence. *See id*. at 442. Lerner attached to her Motion a copy of an email that McManamon sent to her with "bullet points" about his current employment. (See Doc. No. 4-3.) She argues that "[n]either Ms. Lerner's discussion with Plaintiff nor the execution of the [Letter of Intent]—which occurred while she was in California and he was in Ohio—confers specific personal jurisdiction in Ohio for this dispute." (Doc. No. 4-1, PageID# 211.)

8

The burden thus shifts back to McManamon, who must "by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Malone*, 965 F.3d at 504. In his Response, McManamon argues that Lerner purposefully availed herself of Ohio because (a) Lerner's family are the "former owners" of the Cleveland Browns and Lerner's mother still resides in Cuyahoga County; (b) Lerner owns Sugarbush Farm, LLC, an Ohio corporation that owned property in Ohio; (c) Lerner traveled between Ohio and California; (d) Five Star Aviation is an Ohio LLC and it stored and maintained the plane that McManamon flew in Ohio; (e) Lerner told McManamon that when she purchased her airplane, she would store it in Cuyahoga County; and (f) Lerner exchanged "monthly texts and calls" with McManamon while he was in Ohio.[5] (Doc. No. 7, PageID# 246-47.) The Court will consider each alleged contact in turn.

### a) Cleveland Browns Ownership and Lerner's Mother

To McManamon's first argument, Lerner responds that "whether jurisdiction exists over a defendant's family member is irrelevant to whether jurisdiction exists over the defendant." (Doc. No. 8, PageID# 198.) The Court agrees.

As an initial matter, McManamon provides no evidence that Lerner's mother resides in Ohio or that Lerner's family once owned the Cleveland Browns. And even if he had, these alleged contacts are irrelevant to whether the court has jurisdiction over Lerner herself, absent evidence that, for example, Lerner's family was acting as Lerner's agent in Ohio. *See, e.g., Stolle Mach. Co., LLC v. Ram Precision Indus.*, 605 F. App'x 473, 481 (6th Cir. 2015) (explaining a narrow exception where a court will impute an agent's contacts with the forum state to the agent's principal).

---

[5] McManamon did not attach an affidavit to support these arguments, but he did attach an email he sent to Lerner with a draft employment agreement (Doc. No. 7-1), various corporate documents for Five Star Aviation, LLC and Sugarbush Farm, LLC (Doc. Nos. 7-2 through 7-7), and a copy of a complaint filed in Portage County, Ohio against Lerner and others for a tort allegedly committed there in 2006. (Doc. No. 7-8).

### b) Lerner's Ownership of an Ohio LLC

As for McManamon's second argument, Lerner responds that "membership in an Ohio LLC does not automatically confer jurisdiction over the LLC's members," and the fact that the LLC owned property in Ohio does not support the exercise of jurisdiction over a cause of action unrelated to that property. (Doc. No. 8, PageID# 299-300.)

To begin with, "the mere fact that [Lerner] might have an ownership interest or exercise control over a corporate entity does not establish personal jurisdiction over [her] in the forum state where the corporate entity conducts business." *Niederst v. Minuteman Capital, LLC*, 2024 U.S. Dist. LEXIS 130270 at *23 (N.D. Ohio July 24, 2024) (citing *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 771 (E.D. Mich. 2013)). So, Lerner's alleged ownership of Sugarbush Farm, LLC, an Ohio corporation, has no bearing on her amenability to personal jurisdiction in Ohio.

Further, the alleged fact that Sugarbush Farm, LLC owned property in Ohio "does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action." *Conn*, 667 F.3d at 719 (quoting *Rush v. Savchuk*, 444 U.S. 320, 328 (1980)); *see also Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) ("[P]roperty that is not the subject mater of this litigation . . . do[es] not . . . provide contacts . . . sufficient to support . . . jurisdiction.").

### c) Lerner's Travel to Ohio

In response to McManamon's allegation that Lerner traveled to Ohio, Lerner argues that her alleged travel to Ohio "at unspecific times over a period of unspecified years . . . does not establish the requested contacts" with Ohio to support personal jurisdiction. (Doc. No. 8, PageID# 300.)

Again, McManamon provides no evidence that Lerner has ever travelled to Ohio. And even if he had, even "yearly travel to Ohio," without more, does not amount "to contacts sufficiently

continuous and systematic to confer general jurisdiction." *Conn*, 667 F.3d at 719-20 (concluding that the defendant's "yearly trip to Ohio in relation to his personal use of property is [not] sufficient to confer general jurisdiction, particularly where he does not engage in any kind of business within Ohio"). Therefore, this argument fails.

### d) Five Star Aviation, LLC's Incorporation in Ohio

As for the fact that Five Star Aviation is an Ohio LLC that stores a plane in Ohio, Lerner responds that "[t]he place of formation of Plaintiff's *former* employer simply has no bearing on whether this Court has jurisdiction over the individual who he claims promised to be his *next* employer." (Doc. No. 8, PageID# 298.)

McManamon does not provide any evidence that Lerner either has or ever had an ownership interest in Five Star Aviation. Rather, he merely argues that Lerner intended to purchase an interest in Five Star Aviation. (*See* Doc. No. 7, PageID# 243 ("Ms. Lerner advised she . . . **was going to** purchase ownership interest in Five Start Aviation.") (emphasis added).) But "[p]ersonal jurisdiction cannot be based on the intent to make contact with the forum some time in the future." *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 953 (E.D. Mich. 2015); see *also Field Aero., Inc. v. Boeing Co.*, 2017 U.S. Dist. LEXIS 96207 at *20-21 (S.D. Ohio June 22, 2017) (concluding that an unexecuted contract which "might have been performed in Ohio cannot support a finding of personal jurisdiction"). Therefore, this argument too fails.

### e) Lerner's Intent to Store her Plane in Ohio

McManamon's argument that Lerner told him that "upon purchasing her airplane, it would be stored at Cuyahoga County Airport" fails for the same reasons as above. McManamon provides no evidence for this alleged statement by Lerner. And even if he had, "the [C]ourt must evaluate the

contacts that [Lerner] ha[d] already made" with Ohio, not those that she may have intended to make at some time in the future. *Field Aero., Inc.*, 2017 U.S. Dist. LEXIS 96207 at *20.

### f) Lerner's Communications with McManamon in Ohio

McManamon's final argument is that it is "undeniable that the text, emails, and telephone calls between Ms. Lerner and Mr. McManamon included communications while in the State of Ohio." (Doc. No. 7, PageID# 250.)

Lerner responds that these communications are insufficient to confer personal jurisdiction because they were sporadic and because McManamon "initiated [the] discussions . . ., not the other way around." (Doc. No. 8, PageID# 301.)

It is true that where a defendant initiates email or telephone communications, directs them into the forum state, and those communications are at the "heart" of the plaintiff's action, such communications may create personal jurisdiction. *See Bcm High Income Fund v. Newtek Small Bus. Fin.*, 2018 U.S. Dist. LEXIS 239097 at *12 (W.D. Tenn. June 19, 2018) (citing *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)). But "a handful of emails or phone calls alone [will not] confer personal jurisdiction," particularly where the plaintiff initiated the communications, and the defendant's "reply into the forum state" was only "incidental" to the plaintiff's "initial contact." *Id.* at *11 (citing *Rice v. Karsch*, 154 F. App'x 454, 459-64 (6th Cir. 2005); *see also AMB Media, LLC v. OneMB, LLC*, 2024 U.S. App. LEXIS 11277 at *12 (6th Cir. May 8, 2024) (explaining that cases place the emphasis under purposeful availment on "who reached out to whom"). Further, purposeful availment requires that "the contacts [with the forum State] proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475. And purposeful availment's focus is on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285

12

(2014). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id*.

Here, McManamon alleges that he initially reached out to Lerner to "inform[] her of the opportunities he would be forgoing if he stayed at Five Star Aviation." (Doc. No. 1-1, PageID# 16.) And to advance the employment negotiations, McManamon sent Lerner "bullet points" about his potential employment. (Doc. No. 4-3, PageID# 233; *see also* Doc. No. 7, PageID# 243.) Further, McManamon sent Lerner the initial draft of the proposed employment agreement. (Doc. No. 7-1; *see also* Doc. No. 7, PageID# 243.) In sum, McManamon not only initiated all three of the communications with Lerner, but he was also the principal driver behind the negotiations over his future employment. Lerner's communications with McManamon were thus only incidental to McManamon's initial contact. Therefore, McManamon has failed to show that Lerner purposefully availed herself of the privilege of acting in Ohio. *See, e.g., Rice*, 154 F.App'x at 462 (concluding that personal jurisdiction would be improper where the plaintiff initiated all communications into the forum state).

Because "[e]ach part of the *Mohasco* standard 'represents an independent requirement . . . [the plaintiff's] failure to meet any one of the three means that personal jurisdiction may not be invoked.'" *AMB Media*, 2024 U.S. App. LEXIS 11277 at *7 (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)). Accordingly, since McManamon has failed to show purposeful availment, the Court need not conduct further analysis under the Due Process Clause.

## IV.     Conclusion

For the foregoing reasons, the Court grants Lerner's Motion to Dismiss (Doc. No. 4) and dismisses this case without prejudice for lack of personal jurisdiction.[6] Additionally, the Court denies McManamon's Motion to Consolidate Cases as moot.  (Doc. No. 9.)

**IT IS SO ORDERED.**

Dated: August 22, 2024                                       *s/ Pamela A. Barker*
                                                                              PAMELA A. BARKER
                                                                              UNITED STATES DISTRICT JUDGE

---

[6]  If a court lacks personal jurisdiction, it may dismiss a case without prejudice or, in the interest of justice, transfer it to a court that has personal jurisdiction over the defendant.  *See Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012).  McManamon has not moved for transfer, and the Court will not presume McManamon wants his case transferred to the Central District of California.  *See id*. ("Because Plaintiffs never moved for a transfer, they cannot now contend that the district court abused a discretion that it was never asked to exercise[, and] . . . there was no reason for the district court to presume that Plaintiffs wanted their case transferred.")